**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| MARK WHELTON, | Case No.: |
| Plaintiff, | Hon. |

v.

BRIDGEPORT-SPAULDING SCHOOL DISTRICT;
AMY MORALES, in her individual and official capacity;
BRENTOYA BRAY-BREASMY, in her individual and official capacity;
CARMEN CASTILLO, in her individual and official capacity;
LUCY ANNE ERBY, in her individual and official capacity;

Defendants.

---

Eric D. Delaporte (P69673)
DELAPORTE LYNCH, PLLC
Attorneys for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
eric@delaportelynch.com

---

**COMPLAINT**

NOW COMES Plaintiff Mark Whelton, (hereinafter "Mr. Whelton" or "Plaintiff"), by and through his attorneys at Delaporte Lynch, PLLC, and files his Complaint against Bridgeport-Spaulding Community School District for breach of contract, violation of the Michigan Whistleblowers' Protection Act, discharge in violation of public policy (plead in the alternative), violations of the First Amendment of the United States and Michigan Constitutions, violations of federal

and state pre- and post-termination procedural due process, violations of substantive due process; defamation, tortious interference with a business relationship and/or expectancy, intentional infliction of emotional distress, and civil conspiracy. In support of his Complaint, Mr. Whelton states as follows:

GENERAL ALLEGATIONS

VENUE

1. During all relevant times, Plaintiff Mark Whelton (hereinafter, "Plaintiff" or "Mr. Whelton), was the Superintendent of the Bridgeport-Spaulding Community School District.
2. Defendant Bridgeport-Spaulding Community School District (hereinafter, "the District"), is a school district in the State of Michigan with a principal place of business at 4691 Bearcat Blvd. Bridgeport, Saginaw County, MI 48722.
3. Defendant Bridgeport-Spaulding Community School District Board of Education (hereinafter, "the Board" or "Defendant Board of Education"), is a public school district Board of Education entirely situated in Bridgeport, Michigan, within this Honorable Court's territorial jurisdiction.
4. During all relevant times, Defendant Amy Morales (hereinafter, "Defendant Morales"), was the Board President of the Bridgeport-Spaulding Community School District Board of Education.

5. During all relevant times, Defendant Brentoya Bray-Breamsy (hereinafter, "Defendant Bray-Breamsy"), was a Board member serving on the Bridgeport-Spaulding Community School District Board of Education.
6. During all relevant times, Defendant Carmen Castillo (hereinafter, "Defendant Castillo"), was a Board member serving on the Bridgeport-Spaulding Community School District Board of Education.
7. During all relevant times, Defendant Lucy Anne Erby (hereinafter, "Defendant Erby"), was a Board member serving on the Bridgeport-Spaulding Community School District Board of Education.
3. BSSD is entirely situated in the Michigan counties of Berrien and Cass, within this Honorable Court's territorial jurisdiction.
4. This Honorable Court retains subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331 and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. §1367(a).
5. The amount in controversy exceeds $25,000.00.
5. All of the acts underlying this Complaint occurred within the territorial boundaries of this Honorable Court's jurisdiction.
6. Based on the foregoing, venue and jurisdiction are proper in this Honorable Court.

## COMMON FACTS

7. Plaintiff incorporates the previous paragraphs as if contained herein.
8. In July 2018, the Bridgeport-Spaulding Community School District hired Mr. Whelton to serve as Superintendent of the District.
9. Mr. Whelton's initial employment contract covered the period of time from approximately 2018 to 2020, and was thereafter renewed and extended through additional contract terms.
10. The most recent renewal extended Mr. Whelton's contract into 2026.
11. During Mr. Whelton's nearly eight-year tenure as Superintendent, the District experienced great improvement in several areas, including, but not limited to, academic testing, STEAM/STEM educational opportunities, student support initiatives such as Bearcat HOPE, employee retention, enrollment stability, and overall District morale and culture.
12. Mr. Whelton also substantially improved the District's financial condition, by eliminating the $1.8 million deficit that he inherited upon assuming the superintendency, and achieving a $7.3 million fund balance.
13. The District, as a result, was relieved of state financial oversight ahead of schedule.
14. Mr. Whelton achieved financial stability for the District through pursuing a disciplined budget, establishing comprehensive, detailed, and transparent

decision-making processes, and involving relevant departments and stakeholders throughout the District.

15. Mr. Whelton further advocated for the District to undertake additional marketing and recruitment efforts to improve and increase student enrollment.

16. The Board of Education, namely through Defendant Morales, rejected the Superintendent’s efforts and proposals to increase marketing efforts.

17. As Superintendent, Mr. Whelton consistently advocated for the District and the Board of Education abide by Board policies and procedures, and to maintain compliance with state and federal laws, rules, and regulations governing the District.

18. When Board members engaged or pursued courses of action that Mr. Whelton believed to be improper or violative of law, policy, and/or procedure, he opposed and/or refused to facilitate the furtherance of actions he believed to be unlawful or improper.

19. An example of this occurred when Mr. Whelton refused to honor Defendant Morales’ request to pursue improper procedures with respect to IEP testing for a District student.

20. Mr. Whelton endeavored to ensure that District decision and Board activities were lawful, transparent, and completed in accordance with governing laws, rules, and/or procedures.

21. On or about June 23, 2025, the Board completed Mr. Whelton's annual performance evaluation, in which he received an "Effective" rating.

22. Notwithstanding Mr. Whelton's evaluation, during the ensuing months, Board of Education members began publicly and privately opposing an extension of Mr. Whelton's contract.

23. These conversations were spearheaded by the Board President, Defendant Morales.

24. In fact, in September 2025, Ms. Morales texted another Board member regarding her intent not to renew Mr. Whelton's contract.

25. As Mr. Whelton's contract approached renewal, members of the Board increasingly vocalized disagreement over whether his employment should be extended.

26. During this same period, many community members likewise began raising concerns regarding the Board's governance, transparency, compliance with District policies and procedures, and compliance with the Michigan Open Meetings Act.

27. The Board members who were notably opposed to extending Mr. Whelton's contract were Defendants Morales and her loyalists, Defendants Bray-Breamsy, Lucy Erby, and Carmen Castillo.

28. In November 2025, the Saginaw County Election Commission approved recall petition language against Defendants Bray-Breamsy, Lucy Erby and Carmen Castillo, which, while unrelated to Mr. Whelton, brought attention to the public sentiment regarding the Board's improper activities.

29. On November 21, 2025, the Board, during the ongoing dispute as to whether the Board would renew Mr. Whelton's contract, the Board abruptly voted to place Mr. Whelton on administrative leave pending an alleged "investigation" into purported misconduct.

30. The reasons for the investigation were not presented to Mr. Whelton prior to being forced on administrative leave.

31. The reasons for the purported investigation were not only pretextually and largely unknown and, upon information and belief, did not actually exist prior to Mr. Whelton's placement on administrative leave.

32. The rationale was even questioned by certain Board members who expressed uncertainty as to why an investigation was occurring in the first place.

33. The allegations allegedly prompting the investigation were not provided to Mr. Whelton until after multiple requests to the District.

34. Following the various requests, the District produced a handful of purported "complaints," several of which did not concern any acts or omissions of the

Superintendent, and multiple which were previously known to the Board of Education and found to be unsubstantiated.

35. Despite several months of investigation, Mr. Whelton was ultimately exonerated by the Board's own retained investigator.

36. Nevertheless, the Board of Education, voted to nonrenew Mr. Whelton's contract on March 9, 2026.

37. Board members Amy Morales, Brentoya Bray-Breamsy, Carmen Castillo, and Lucy Anne Erby voted to reject the proposed contract extension.

38. The Board did not present Mr. Whelton with charges prior to nonrenewal, and once again, certain Board members expressed concern that they were not presented with a basis for the motion to nonrenew.

39. Only after the nonrenewal did Defendant Morales purport to provide a pretextual justification, specifically, that District had an alleged reduction in enrollment.

40. At the time, the District's loss of enrollment was less than the average loss in the county.

## COUNT I

*Breach of Contract*

41. Plaintiff incorporates the previous paragraphs as if contained herein.

42. Plaintiff entered into a valid and enforceable contract of employment with the District.

43. Pursuant to that employment agreement, Defendants were required to follow certain procedures with respect to Plaintiff's employment.

44. Plaintiff substantially performed all obligations under the employment agreement while serving as the Superintendent.

45. Plaintiff's contract provided protection against termination for "arbitrary and capricious reasons."

46. Plaintiff had been rated "effective" and/or "highly effective" in his evaluations as Superintendent.

47. Defendant listed a reduction in enrollment as a reason for Plaintiff's termination.

48. However, the enrollment loss at the District was less than the county average at the time.

49. Plaintiff had been successful in his position as Superintendent.

50. Therefore, the reasons provided were arbitrary and capricious because they are unsupported by facts.

51. Defendants nevertheless subjected Plaintiff to a pretextual investigation, placed him on administrative leave, and ultimately discharged Plaintiff from

employment for reasons which were arbitrary, capricious, retaliatory, and untrue.

52. Defendants' actions as described above and in this Complaint constituted a material breach of Plaintiff's employment agreement.

53. As a result of Defendants' actions, Plaintiff suffered economic and noneconomic damages, including, but not limited to, compensatory damages, emotional distress, mental harm, physical harm, and loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Requested Relief section of this Complaint as permitted by applicable law.

COUNT II

*Violation of the Michigan Whistleblowers' Protection Act*
(MCL 15.361 *et seq*.)

54. Plaintiff incorporates the previous paragraphs as if contained herein.

55. Defendant is an employer subject to the Whistleblower Protection Act.

56. During his employment, Plaintiff reported conduct which he believed violated law, policy, and procedure governing the District, as described in this Complaint.

57. Plaintiff made his reports to District officials, including the Defendants named in this Complaint

58. Defendants were, thus, aware of Plaintiff's protected activity.

59. In retaliation for Plaintiff's protected activity, Defendant took an adverse employment action against Plaintiff by discharging him from employment.

60. Following Plaintiff's protected activity, Defendants subjected Mr. Whelton to materially adverse employment actions, including forcing Mr. Whelton to be on administrative leave without a basis, performing an investigation into the sham allegations, and ultimately discharging Mr. Whelton from his employment with the District.

61. Defendant's adverse employment action against Plaintiff was a direct result of his engagement in a protected activity.

62. The temporal proximity combined with Defendants' vocal opposition to Plaintiff, the lack of any misconduct following the investigation, and the shifting and pretextual reasons for Defendants' adverse employment actions, support the reasonable inference that Plaintiff's protected activity was a motivating factor in Defendants' unlawful retaliation.

63. As a result of Defendants' actions, Plaintiff suffered economic and noneconomic damages, including, but not limited to, compensatory damages, emotional distress, mental harm, physical harm, and loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

COUNT III

*Discharge in Violation of Public Policy (plead in the alternative)*

64. Plaintiff incorporates the previous paragraphs as if contained herein.

65. An employee's discharge is against public policy if the employee is discharged for refusing to violate law or public policy, or the employee is discharged for exercising a well-established statutory right. *Lewandowski v Nuclear Mgt Co, LLC*, 272 Mich App 120, 127 (2006).

66. Plaintiff repeatedly opposed participating in violations of law, policy, and/or procedure and opposed facilitating actions which constituted violations of law, policy, and/or procedure.

67. Defendants, following Plaintiff's steadfast commitment to following the law, subjected Plaintiff to an adverse employment action by forcing him on administrative leave for pretextual and baseless reasons.

68. Defendants further subjected Plaintiff to an adverse employment action by nonrenewing him for reasons which were pretextual and baseless.

69. Defendants' adverse employment actions against Plaintiff were motivated, in part, for his refusal to violation law, policy, and/or procedure.

70. As a result of Defendants' actions, Plaintiff suffered economic and noneconomic damages, including, but not limited to, compensatory damages, emotional distress, mental harm, physical harm, and loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

COUNT IV

*Violation of the First Amendment of the U.S. Constitution*

71. Plaintiff incorporates the previous paragraphs as if contained herein.

72. The First Amendment guarantees citizens the right to freedom of speech, and requires that debate on public issues be "uninhibited, robust, and wide open." *Bond v. Floyd*, 385 U.S. 116, 118 (1966).

73. The First Amendment prohibits government officials from subjecting individuals to "retaliatory actions" after the fact for having engaged in protected speech. *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022).

74. Plaintiff can establish a First Amendment retaliation claim by demonstrating the following: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Bell v Johnson*, 308 F3d 594, 602 (CA 6, 2002).

75. Plaintiff engaged in protected speech concerning matters of public importance and concern.

76. Plaintiff's speech concerned operations of a public school district and conduct by public officials.

77. Plaintiff's speech was protected by the First Amendment of the United States Constitution.

78. Defendants subjected Plaintiff to an adverse employment action by forcing him on administrative leave for pretextual and baseless reasons.

79. Defendants further subjected Plaintiff to an adverse employment action by nonrenewing him for reasons which were pretextual and baseless.

80. Defendants' adverse employment actions against Plaintiff were motivated, in part, for his free speech activities as described in this Complaint.

81. As a result of Defendants' actions, Plaintiff suffered economic and noneconomic damages, including, but not limited to, compensatory damages, emotional distress, mental harm, physical harm, and loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT V

*Violation of Article I § 5 of the Michigan Constitution*

82. Plaintiff incorporates the previous paragraphs as if contained herein.

83. The Michigan Constitution prohibits retaliation by a government official and/or defendant against an individual for exercise of their First Amendment free speech rights.

84. "The United States and Michigan Constitutions provide the same protections of the freedom of speech, and this Court does not interpret the Michigan Constitution's protections of speech more broadly than the federal constitution's protections. Thus, this Court may consider federal authority when interpreting the extent of Michigan's protections of free speech." *Thomas M Cooley Law Sch v Doe*, 300 Mich App 245, 256 (2013).

85. Plaintiff engaged in protected speech concerning matters of public importance and concern.

86. Plaintiff's speech concerned operations of a public school district and conduct by public officials.

87. Plaintiff's speech was protected by the First Amendment of the United States Constitution.

88. Defendants subjected Plaintiff to an adverse employment action by forcing him on administrative leave for pretextual and baseless reasons.

89. Defendants further subjected Plaintiff to an adverse employment action by nonrenewing him for reasons which were pretextual and baseless.

90. Defendants' adverse employment actions against Plaintiff were motivated, in part, for his free speech activities as described in this Complaint.

91. As a result of Defendants' actions, Plaintiff suffered economic and noneconomic damages, including, but not limited to, compensatory damages, emotional distress, mental harm, physical harm, and loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT VI

*Federal Procedural Due Process Violation*
*Via the Vehicle of 42 U.S.C. § 1983*

92. Plaintiff incorporates the previous paragraphs as if contained herein.

93. Under 42 U.S.C. § 1983, a person acting on behalf of the State who causes a citizen of the United States to be deprived of any rights, privileges, or immunities secured by the Constitution shall be liable to that party at law.

94. The Fourteenth Amendment to the United States Constitution guarantees that no State shall deprive any person of life, liberty, or property without due process of law.

95. "Due process requires some sort of pretermination hearing, the formality of which depends upon the importance of the interest and the nature of the subsequent proceedings." *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004).

96. With respect to a public employee that holds a property interest in his employment, prior to termination, he must "be given oral or written notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer." *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir. 1990) (citing *Loudermill v. Cleveland Bd. of Educ*., 844 F.2d 304, 310 (6th Cir. 1988).

97. Plaintiff held a constitutionally protected property interest in his continued employment as Superintendent.

98. This property interest arose from the fixed term of his employment contract and protection against termination or discharge for arbitrary and capricious reasons.

99. Defendants placed Plaintiff on administrative leave and performed an investigation into conduct for which Defendants never placed Plaintiff on notice.

100. Defendants ultimately discharged Plaintiff from his employment without providing notice of the charges against him, as they were not disclosed until after the Board vote to nonrenew Mr. Whelton's contract.

101. Defendants, thus, denied Mr. Whelton notice and an opportunity to be heard at a meaningful time and place regarding the alleged charges against him.

102. Defendants did not afford Mr. Whelton any post-termination due process procedures.

103. All of the actions taken by Defendants, or those acting on behalf of, or conspiring with, Defendants, and referred to herein, were done by Defendants while acting under color of state law.

104. Defendants' wrongful acts deprived Plaintiff of rights and freedoms guaranteed under the Constitution.

105. Defendants' wrongful acts deprived Plaintiff of his due process rights.

106. As a result of Defendants' actions, Plaintiff suffered economic and noneconomic damages, including, but not limited to, compensatory damages, emotional distress, mental harm, physical harm, and loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT VII

*State Procedural Due Process Violation*

107. Plaintiff incorporates the previous paragraphs as if contained herein.

108. Plaintiff can establish Defendant violates his Due Process rights, namely he was not provided the necessary notice and opportunity to respond

as required by the Michigan Constitution. *Tomiak v Hamtramck Sch. Dist.*, 426 Mich. 678, 686-87 (1986).

109. Plaintiff can establish that Defendant violated his Due Process rights, namely he was not provided an impartial decisionmaker. *Galien Twp. Sch. Dist. v. Dep't of Ed.,* 310 Mich. App. 238 (2015).

110. Plaintiff only has to establish that probability of actual bias on the part of a decisionmaker is too high to be constitutionally tolerable. *Id.*

111. The Michigan Supreme Court has recognized that a risk of bias may be presented where the decisionmaker "might have prejudged the case because of prior participation as an accuser, investigator, fact finder or initial decisionmaker." *Id.*

112. Plaintiff held a constitutionally protected property interest in his continued employment as Superintendent.

113. This property interest arose from the fixed term of his employment contract and protection against termination or discharge for arbitrary and capricious reasons.

114. Defendants placed Plaintiff on administrative leave and performed an investigation into conduct for which Defendants never placed Plaintiff on notice.

115. Defendants ultimately discharged Plaintiff from his employment without providing notice of the charges against him, as they were not disclosed until after the Board vote to nonrenew Mr. Whelton's contract.

116. Defendants, thus, denied Mr. Whelton notice and an opportunity to be heard at a meaningful time and place regarding the alleged charges against him.

117. Defendants did not afford Mr. Whelton any post-termination due process procedures.

118. All of the actions taken by Defendants, or those acting on behalf of, or conspiring with, Defendants, and referred to herein, were done by Defendants while acting under color of state law.

119. Defendants' wrongful acts deprived Plaintiff of rights and freedoms guaranteed under the Constitution.

120. Defendants' wrongful acts deprived Plaintiff of his due process rights.

121. As a result of Defendants' actions, Plaintiff suffered economic and noneconomic damages, including, but not limited to, compensatory damages, emotional distress, mental harm, physical harm, and loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT VIII

*Violation of Substantive Due Process*
*Via the Vehicle of 42 U.S.C. § 1983*

122. Plaintiff incorporates the previous paragraphs as if contained herein.

123. Due process protects individuals from arbitrary and capricious acts of the government which are fundamentally unfair and constitute an abuse of authority under the color of law when engaging in the acts described in this Complaint.

124. Defendants, acting under the color of law, subjected Plaintiff to an arbitrary and capricious governmental action which resulted in his discharge from employment.

125. Defendants' discharge of Plaintiff's employment deprived Plaintiff of a property interest in his continued employment.

126. Defendants' actions were not related to any legitimate government interest and were, instead, motivated by personal animus, discrimination, and retaliation.

127. Defendants' conduct was arbitrary, capricious, and fundamentally unfair.

128. As a result of Defendants' actions, Plaintiff suffered economic and noneconomic damages, including, but not limited to, compensatory damages, emotional distress, mental harm, physical harm, and loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT IX

*Defamation*

129. Plaintiff incorporates the previous paragraphs as if contained herein.

130. The elements of a defamation claim are: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. *Mitan v Campbell*, 474 Mich 21, 24 (2005).

131. "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Sarkar v Doe*, 318 Mich App 156, 178 (2016).

132. With respect to a public figure, the defamatory statement must also have been made with "actual malice." *Edwards v Detroit News, Inc*, 322 Mich App 1, 12 (2017).

133. A statement is made with "actual malice" when the publisher knows that the statement was false or made the statement with reckless disregard of whether it was false or not. *Milkovich v Lorain Journal Co,* 497 US 1, 14 (1990).

134. Defendants published statements to third parties concerning alleged misconduct by Plaintiff which the Board knew to be unsubstantiated to third parties.

135. Defendants published these statements to third parties with actual knowledge of their falsity, and/or with reckless disregard for their truth or falsity.

136. Defendants' defamatory statements are further memorialized in Board meeting minutes and recordings of those events.

137. Defendants' defamatory statements and publications harmed Plaintiff's reputation and standing in the community.

138. As a result of Defendants' actions, Plaintiff suffered economic and noneconomic damages, including, but not limited to, compensatory damages, emotional distress, mental harm, physical harm, and loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT X

*Tortious Interference with Business Relationship*

139. Plaintiff incorporates the previous paragraphs as if contained herein.

140. Plaintiff had an ongoing business relationship with Defendants to serve as the Superintendent of Bridgeport-Spaulding Community Schools.

141. Plaintiff had a reasonable expectation of continued employment as Superintendent with the District.

142. The individual Defendants knew of the business expectancy that Plaintiff had with the District.

143. Defendants interfered with Plaintiff's business expectancy and relationship with the District by intentionally engaging in the conduct described in this Complaint.

144. Defendants interfered with Plaintiff's business expectancy and relationship with the District by retaliating against Plaintiff for personal, improper, and unlawful reasons.

145. Defendants' interference was unjustified, unlawful, and interfered with Plaintiff's business expectancy and relationship with the District.

146. As a result of Defendants' actions, Plaintiff suffered economic and noneconomic damages, including, but not limited to, compensatory damages, emotional distress, mental harm, physical harm, and loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

COUNT XI

*Intentional Infliction of Emotional Distress*

147. Plaintiff incorporates the previous paragraphs as if contained herein.

148. Plaintiff. can succeed on a claim of intentional infliction of emotional distress by demonstrating four elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Haverbush v. Powelson*, 217 Mich. App. 228, 233-34 (1996).

149. Defendants' conduct, including the deliberate retaliation described in this Complaint, was motivated by unjustified and unlawful animus toward Plaintiff.

150. Defendants' conduct was extreme and outrageous.

151. Defendants intentionally and/or recklessly subjected Plaintiff to a pretextual administrative leave, knowingly removed Plaintiff from his position without any justification, and ultimately discharged Plaintiff from employment based on unlawful and pretextual reasons.

152. Defendants with the intent to cause Plaintiff extreme emotional distress, and/or with reckless disregard of the likelihood Defendants' actions would cause extreme emotional distress.

153. As a result of Defendants' actions, Plaintiff suffered economic and noneconomic damages, including, but not limited to, compensatory damages, emotional distress, mental harm, physical harm, and loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

COUNT XII

*Conspiracy*

154. Plaintiff incorporates the previous paragraphs as if contained herein.

155. A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means. *Swain v. Morse*, 332 Mich. App. 510, 530 (2020).

156. A plaintiff alleging a civil conspiracy is not required to provide direct proof of an agreement or a formal agreement between or among the conspirators. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985).

157. It is sufficient if the circumstances, acts, and conduct of the conspirators establish an agreement in fact. *Id.* Furthermore, a civil conspiracy may be established by circumstantial evidence and may be based on inference. *Moore v. Paducah*, 890 F.2d 831, 834 (6th Cir. 1989).

158. Defendants Morales, Bray-Breamsy, Castillo, and Erby acted in concert to accomplish the unlawful actions and objectives as described in this Complaint.

159. Defendants' actions were coordinated and, in many instances, conducted outside of the established processes for pursing Board action.

160. Defendants' actions as described in this Complaint, along with the surrounding context of the public's growing contempt for Defendants' violations of law, support the reasonable inference that Defendants were in agreement in accomplishing the common objective of discharging Plaintiff from his employment.

161. All of the actions taken by all Defendants, or those acting on behalf of, or conspiring with, Defendants, and referred to herein, were done by Defendants while acting under color of state law.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## REQUESTED RELIEF

Plaintiff prays that this Honorable Court find in her favor and order the following:

a. Find that Defendants violated the Michigan Whistleblowers' Protection Act;

b. In the alternative, find that Defendants discharged Plaintiff in violation of public policy;

c. Find that Defendants violated Plaintiff's free speech rights under the First Amendment to the United States Constitution;

d. Find that Defendants violated Plaintiff's federal pre-termination and post-termination procedural due process rights;

e. Find that Defendants violated Plaintiff's state pre-termination and post-termination procedural due process rights;

f. Find that Defendants violated Plaintiff's substantive due process rights;

g. Find that Defendants defamed Plaintiff;

h. Find that Defendants tortiously interfered with Plaintiff's business relationship and/or expectancy;

i. Find that Defendants intentionally inflicted emotional distress upon Plaintiff;

c. Award Plaintiff all appropriate compensation, fines, and penalties against Defendant available under law;

d. Award Plaintiff compensatory damages, including but not limited to back pay, front pay, compensation for mental and physical damages, for emotional

distress, loss of income, and any other damages caused by Defendant's unlawful conduct;

e. Award Plaintiff his attorney fees and costs, and any penalties, pursuant to relevant statutes and law; and,

f. Provide any other relief that this Honorable Court finds fair and just.

Respectfully submitted,

Dated: September 29, 2026



Eric D. Delaporte (P69673)
DELAPORTE LYNCH, PLLC
Attorneys for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
eric@delaportelynch.com

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| MARK WHELTON, | Case No.: |
| Plaintiff, | Hon. |

v.

BRIDGEPORT-SPAULDING SCHOOL DISTRICT;
AMY MORALES, in her individual and official capacity;
BRENTOYA BRAY-BREASMY, in her individual and official capacity;
CARMEN CASTILLO, in her individual and official capacity;
LUCY ANNE ERBY, in her individual and official capacity;

Defendants.

---

Eric D. Delaporte (P69673)
DELAPORTE LYNCH, PLLC
Attorneys for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
eric@delaportelynch.com

---

**JURY DEMAND**

In accordance with Fed. R. Civ. P. 38, the Plaintiff formally demands a trial by jury.

Respectfully submitted,

Dated: September 29, 2026



Eric D. Delaporte (P69673)
DELAPORTE LYNCH, PLLC
Attorneys for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
eric@delaportelynch.com